



**UNITED STATES DISTRICT COURT**

OCT 21 2022

THOMAS G. BRUTON

**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION** CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **ROBERT H. ALAND,** ) | **1:22-CV-5821** |
| ) | **Judge Gottschall** |
| Plaintiff, ) | **Magistrate Judge Kim** |
| ) | **Random** |
| v. ) | |
| ) | |
| **U. S. DEPARTMENT OF THE INTERIOR**; ) | Magistrate Judge: _____ |
| **DEB HAALAND**, Secretary of the U. S. ) | |
| Department of the Interior; **U. S. FISH &** ) | |
| **WILDLIFE SERVICE**; and **MARTHA M.** ) | Declaratory Judgment Act, 28 U.S.C. |
| **WILLIAMS**, Director of the U. S. Fish & ) | §§ 2201 & 2202; Federal Question, |
| Wildlife Service, ) | 28 U.S.C. § 1331 |
| ) | |
| Defendants. ) | |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### I. Introduction

1. This is a civil suit for declaratory and injunctive relief under the Declaratory Judgment

Act of 1973 ("DJA"), 28 U.S.C. §§ 2201 and 2202. This suit seeks (a) a declaration that

Defendant Martha M. Williams ("Williams"), Director of Defendant U. S. Fish & Wildlife

Service ("FWS"), an agency of Defendant U. S. Department of the Interior ("DOI"), illegally

holds her office in violation of 16 U.S.C. § 742b(b), which requires the FWS Director to have

"scientific education and experience," and (b) the immediate removal of Defendant Williams

from that office, which she holds illegally.

### II. Parties

2. **Plaintiff.** Plaintiff, a retired lawyer and Adjunct Professor at the Northwestern

University School of Law, resides in Winnetka, Cook County, Illinois 60093, United States of

America. For the last 25 years or more as more fully described in ¶¶ 21-36 below, Plaintiff has been (a) involved, directly, indirectly (through environmental organizations), continuously and substantially, in legal and other actions to protect and preserve wildlife and wildlife habitats and (b) engaged in recreational activities and enjoyment of wildlife in those habitats.

3. **Defendants.** (a) Defendant DOI is a federal executive department responsible for the administration of lands, minerals, and other resources of the United States. Its mission is to protect and manage the nation's natural resources and cultural heritage for the benefit of the American people; providing scientific and scholarly information about those resources and natural hazards; and exercse the nation's trust responsibilities and special commitments to American Indians, Alaska Natives and island territories under U.S. administration. It has over 70,000 employees. Defendant DOI oversees about 420 million acres of federal lands, about 55 million acres of tribal lands, more than 700 million acres of subsurface minerals and about 2.5 billion acres of the outer continental shelf.

(b) Defendant Haaland is the Secretary of Defendant DOI and a member of the President's Cabinet. In that capacity Defendant Haaland has management and supervisory responsibility for all functions of Defendant DOI and its agencies such as Defendant FWS, including, among others, management of public lands, national parks and national monuments and protection of species, including wildlife. 16 U.S.C. § 742b(d). Defendant Haaland is sued in her official capacity.

(c) Defendant FWS, an agency of Defendant DOI, is the federal agency responsible for the conservation, protection and restoration of fish, wildlife and natural habitats across the United States and its insular territories. 16 U.S.C. § 742b(b), (c). Its primary mission is "to work with others to conserve, protect and enhance fish, wildlife and plants and their habitats for

- 2 -

the continuing benefit of the American people." It has about 9,000 employees. Its responsibilities include, together with the National Oceanic and Atmospheric Administration, an agency of the U. S. Department of Commerce, administering and enforcing the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 – 1544, including listing and delisting species under the ESA.

(d) Defendant Williams currently is serving as Director of Defendant FWS and in that position is "the chief executive of [Defendant FWS], establishes [FWS] policy, issues directives, and is responsible for all the [FWS] does or fails to do"; "the Director establishes [FWS] policies and sets priorities with the support of the Assistant and Regional Directors." U. S. Fish & Wildlife Service, 050 FW 1, Directorate Roles and Relationships, ¶ 1.2.A (March 27, 1996). Defendant Williams is sued in her official capacity.

### III. Jurisdiction

4. This Court has subject matter jurisdiction pursuant to Article III, Section 2, Clause 1 of the U. S. Constitution and 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

5. The DJA, 28 U.S.C. § 2201, authorizes this Court "in the case of an actual controversy within its jurisdiction . . .[to] declare the rights and other legal relations of any interested party seeking such declaration."

6. The DJA, 28 U.S.C. § 2202, authorizes this Court to grant "further necessary or proper relief based on a declaratory judgment . . . , after reasonable notice, against any adversary party whose rights have been determined by such judgment."

## IV. Actual Controversy

7. The term "actual controversy" in 28 U.S.C. § 2201 refers to "Controversies" that are justiciable under Article III, Section 2, Clause 1 of the U. S. Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).

8. The U. S. Supreme Court stated the "actual controversy" requirement in the declaratory judgment context as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.* at 127, quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

9. This case involves an actual controversy because the parties dispute whether Defendant Williams holds office in violation of 16 U.S.C. § 742b(b), a law of the United States. The dispute is (a) between parties having adverse interests as described in ¶¶ 21-36 below; (b) immediate, because Defendant Williams' continuation in office as FWS Director risks legal contamination of all FWS decisions in which she participates, directly or indirectly, from the present time (and before) to the time she leaves office[1]; and (c) real, because illegal decisions could result in deaths of injuries to endangered and threatened species that are the subjects of those decisions. It is essential that this Court determine that Defendant Williams occupies the office of Director illegally and order her removal from office so that those immediate and real

---

[1] See *L.M.-M. v. Cuccinelli*, 442 F.Supp.3d 1 (D.C. D.C. 2020), judgment entered, 2020 WL 1905063 (D.C. D.C. 2020), appeal dismissed, 2020 WL 5358686 (D.C. Cir. 2020). See also *Behring Regional Center LLC v. Wolf*, 544 F.Supp.3d 937 (N.D. Cal. 2021), appeal dismissed, 2022 WL 602883 (9th Cir. 2022).

consequences of the legally contaminated FWS decisions in which she participated can be eliminated or minimized.

10.  The Supreme Court stated that "our analysis must begin with the recognition that, where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat . . . ." *MedImmune, Inc.* at 128-29 (emphasis by the Court).

## V.  Declaratory Judgment Relief

11.  This Court has substantial discretion whether to grant a declaratory judgment based on equitable, prudential and policy arguments. *MedImmune, Inc.* at 136. "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  See *Klene v. Napolitano*, 697 F.3d 666, 669-70 (7th Cir. 2012).

12.  The procedure for obtaining a declaratory judgment under 28 U.S.C. §§ 2201 is provided by Rule 57 of the Federal Rules of Civil Procedure ("FRCP").  The Advisory Committee Notes with regard to FRCP 57 state:

> A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding.  Inasmuch as it often involves only an issue of law on undisputed facts or relatively undisputed facts, it operates frequently as a summary judgment proceeding, justifying docketing the case for early hearing . . .
>
> The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of status, may be declared. The petitioner must have a practical interest in the declaration sought . . . .
>
> The demand for relief shall state with precision the declaratory judgment desired, to which may be joined a demand for coercive relief . . . .

13. FRCP 57 provides that "the court may order a speedy hearing of a declaratory judgment action."

14. This case presents a classic example of a situation in which this Court, after holding a speedy hearing, should exercise its discretion and grant the declaratory judgment and coercive relief requested by Plaintiff. Defendant Williams illegally holds an extremely important federal office (see ¶¶ 37-45 below) in violation of a federal statute that clearly and unequivocally prescribes the requirements for that office to assure proper operation of Defendant FWS and the protection and preservation of species, including wildlife. There is an immediate need for the declaratory judgment because species, including wildlife, in the United States could suffer serious adverse consequences if the declaratory judgment and relief are not granted and Defendant Williams continues to serve illegally as FWS Director and thereby is involved in illegal actions and non-actions.

15. The resources of the judicial system and the parties will be wasted if the declaratory judgment and relief are not granted because significant actions by Defendant FWS while Defendant Williams illegally occupies the office of FWS Director will be challenged by aggrieved plaintiffs, including Plaintiff.

## VI. Venue

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiff resides in Winnetka, Cook County, Illinois 60093, which is within the Northern District of Illinois, Eastern Division.

## VII. Notice & Available Remedy

17. FRCP 57 provides that the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.

18. Plaintiff has no available remedy in the circumstances other than to obtain a declaration from this Court that Director Williams occupies her office illegally and must be removed from office. Nevertheless, Plaintiff has taken multiple actions to achieve Defendant Williams' exit from office to avoid this litigation and save judicial resources.

19. Plaintiff notified Defendants Haaland and Williams on at least seven occasions by email -- January 22, February 20, March 22, May 16, June 26, July 29 and August 8, 2022 -- that Defendant Williams occupies her position as FWS Director illegally due to violation of 16 U.S.C. § 742b(b) and requested that Defendant Williams resign or be terminated involuntarily. Plaintiff received no responses.

20. On October 19, 2022, Plaintiff informed Defendants Haaland and Williams that this lawsuit would be filed if Defendant Williams did not leave office voluntarily or involuntarily by a specified date. Defendant DOI's Office of Intergovernmental and External Affairs responded on October 20, 2022, in an unsigned email that Defendant DOI "is fully confident that Director Williams is well qualified and has all of the necessary authority to lead FWS." The response did not mention 16 U.S.C. § 742b(b).

## VIII. <u>Standing</u>

21. Plaintiff has had a longstanding and passionate interest in the proper administration and enforcement of the ESA in accordance with the congressional purpose for its enactment. The Supreme Court in a landmark 1978 case stated that the ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 180 (1978).

22. Plaintiff has been a regular visitor to, and has spent substantial time in, the Greater Yellowstone Ecosystem ("GYE") -- primarily northwest Wyoming -- for more than 40 years. He

first visited the GYE, a vast, mountainous and relatively unpopulated area consisting of almost

20 million acres in northeast Idaho, southwest Montana and northwest Wyoming that includes

some of America's most cherished wild lands, in 1974. In the period from 1998 to the date of

filing this Complaint, Plaintiff has visited the GYE an average of 5 - 6 times annually.

23. During his visits to the GYE, Plaintiff has regularly and frequently hiked and

engaged in other outdoor activities within Grand Teton and Yellowstone National Parks and

surrounding national forests. These activities have included wildlife viewing, wildlife and scenic

photography, boating, skiing, snow-shoeing and aesthetic enjoyment, in areas inhabited by

grizzly bears, a protected species the Lower 48 States under the ESA (see ¶¶ 27, 28 below); gray

wolves, a protected species in most of the Lower 48 States under the ESA (see ¶ 29 below); and

other species. Plaintiff intends to continue these activities indefinitely.

24. Plaintiff has participated (a) financially in successful group efforts to retire

allotments for grazing domestic livestock held by private individuals on public lands under the

jurisdiction of Defendant DOI in the GYE to prevent wildlife conflicts with domestic grazing

operations and (b) physically in group efforts to remove barbed wire fences on retired allotments

so that wildlife can have unrestricted access to those public lands free of conflicts and traverse

those public lands free of danger from the fences particularly when hidden by deep snow.

25. Plaintiff submitted detailed written comments to Defendant FWS in opposition to its

(a) 2005 proposed rule to remove ESA protection for GYE grizzly bears (70 Fed. Reg. 69854

(Nov. 17, 2005)) on February 20, 2006, and written supplements to those comments on March 4,

June 12, October 4 and November 7, 2006, and February 12, 2007, and (b) 2016 proposed rule to

remove ESA protection for GYE grizzly bears (81 Fed. Reg. 13174 (March 11, 2016)) on May 9,

2016, and written supplements to those comments on May 14 and 17 and October 6, 2016.

26. Plaintiff also submitted detailed written comments to Defendants DOI and FWS and the U. S. Department of Agriculture ("USDA") in support of protection and preservation of wildlife and critical habitat, including (a) the 2018 proposed amendment to 50 C.F.R. § 424.11 eliminating language from the regulations that precluded Defendants DOI and FWS from taking economic and other impacts into account in listing, delisting and reclassifying decision under the ESA (83 Fed. Reg. 35193 (July 25, 2018)), and a written supplement to those comments on October 5, 2018; (b) the 2015 Yellowstone Bison Management Plan and Environmental Impact Statement promulgated by the National Park Service, an agency of Defendant DOI, on June 15, 2015, in cooperation with the State of Montana; (c) the USDA's 2016 Environmental Assessment: Predator Damage and Conflict Management in Wyoming promulgated by Animal and Plant Health Inspection Services (Ref: APHIS-2016-0084-0001) on December 15, 2016; (d) environmental organizations' April 19, 2017, Petition to List Giraffe (*Giraffa camelopardalis*) under the ESA on May 8, 2019 (see 84 Fed. Reg. 17768 (April 6, 2019)); (e) the USDA's November 2020 East Paradise Range Allotment Management Plan, Environmental Assessment, requesting the termination of grazing allotments in Montana to protect public lands and wildlife and two supplements to those comments on December 2, 3 and 28, 2020, and 2021 Decision Notice with regard to those allotments; and (f) the USDA's November 2021 Elk Ridge Complex Rangeland Supplementation Project Environmental Assessment on December 25, 2021.

27. Plaintiff was plaintiff *pro se* and *pro bono* in a civil suit under 16 U.S.C. § 1540(g)(1)(A) to invalidate Defendant FWS's 2007 final rule removing ESA protection for GYE grizzly bears (*Aland v. Salazar*, U. S. District Court, Northern District of Illinois, Eastern Division, Case No. 1:07-cv-04358-JBZ; filed August 2, 2007), and was amicus curiae in the civil

suit that invalidated that final rule (*Greater Yellowstone Coalition, Inc. v. Servheen*, 672 F. Supp. 2d 1105 (D. Mont. 2009), aff'd, 665 F. 3d 1015 (9th Cir. 2011)). [2]

28. Plaintiff was a plaintiff *pro se* and *pro bono* in a consolidated civil suit under 16 U.S.C. § 1540(g)(1)(A) that invalidated Defendant FWS's 2017 final rule removing ESA protection for GYE grizzly bears. *Crow Indian Tribe v. United States*, 343 F.Supp.3d 999 (D. Mont. 2018), aff'd, 965 F.3d 662 (9th Cir. 2020).

29. Plaintiff is a plaintiff *pro se* and *pro bono* in a civil suit under 16 U.S.C. § 1540(g)(1)(A) to invalidate Defendant FWS's 2020 final rule removing ESA protection for gray wolves. [3] *Aland v. U.S. Department of the Interior et al.*, Case No. 4:22-cv-01321. That final rule was invalidated in related cases, *Defenders if Wildlife et al. v. U. S. Fish & Wildlife Service et al.*, 2022 WL 499838 (N. D. Cal. 2022), which are on appeal to the U. S. Court of Appeals for the Ninth Circuit. Cases Nos. 21-16382 et al. Plaintiff's case was stayed by the District Court pending resolution of the appeal by the Ninth Circuit. *Aland v. U.S. Department of the Interior et al.*, Doc. No. 44 (May 16, 2022).

30. Plaintiff devoted thousands of hours and expended significant funds over more than 15 years to the prosecution of the civil suits described in ¶¶ 27-29 above .

31. Plaintiff intends to continue indefinitely his activities, including *pro bono* and *pro se* litigation, to protect and preserve species, including wildlife, and habitat against unlawful actions

[2] Plaintiff's suit was transferred to the U. S. District Court in Boise, Idaho, where a similar civil suit was pending, and assigned Case No. 1:08-cv-00024-EJL. Thereafter the Idaho District Court stayed both cases while *Greater Yellowstone* was pending on appeal by Defendants DOI and FWS in the Ninth Circuit and dismissed the cases after the Ninth Circuit's affirmance on the ground that they were moot.

[3] Plaintiff's suit was transferred to the U. S. District Court for the Northern District Court of California, where related civil suits were pending, and assigned Case No. 4:22-cv-01321.

and inactions by Defendants DOI and FWS and other federal agencies. Thus, Plaintiff has an immediate, real, direct and continuing interest in and need for the proper administration and enforcement of the ESA in accordance with the congressional purpose for its enactment.

32. Plaintiff's enjoyment of areas in which grizzly bears, gray wolves and other species occur has been and will continue to be immeasurably enhanced by the presence of these species, which are icons of American history and culture, enhance the wildness and natural state of these areas and are essential to the health of the overall ecosystems in which they occur. Thus, Plaintiff has an immediate, real, direct, continuing and personal interest in and need for the protection and preservation of these species by Defendants DOI and FWS.

33. Plaintiff, as a result of Defendant Williams' illegal occupation of the office of FWS Director, has suffered and will suffer, on an ongoing basis in the future, injury in fact, which is concrete and particularized and actual and imminent rather than conjectural or hypothetical due to the legal contamination of all decisions by Defendant FWS in which she participates, directly or indirectly, that will result in determinations of invalidity by courts in lawsuits challenging those decisions.

34. The legally contaminated decisions by Defendant FWS due to the involvement of Defendant Williams could result in the (a) killing and maiming of grizzly bears, gray wolves and other species resulting in ecological harm to the ecosystems where these species now occur and will occur in the future; (b) adverse impact on Plaintiff's recreational pursuits such as hiking, boating, cross-country skiing, wildlife viewing and photography and aesthetic enjoyment; and (c) loss to Plaintiff and others, in the words of the philanthropist and environmentalist, Laurance S. Rockefeller, whose name adorns the Laurance S. Rockefeller Visitor Center in Grand Teton National Park, of the "spiritual renewal that comes along with the wonder of the natural world."

35. These injuries will be directly traceable to Director Williams as a result of her illegal occupation of her office and the resulting legal contamination of her decisions; and it is likely, and not merely speculative, that the injuries will be redressed by a declaration resulting in the removal of Director Williams from office.

36. Plaintiff has legal standing to bring and prosecute this lawsuit for the reasons stated in ¶¶ 21-35 above.

## IX. Importance of FWS Director Position

37. The position of FWS Director is the most important position in the United States government for protection and preservation of species, including enforcement of the ESA. See ¶ 3(c), (d) above.

38. FWS decisions are determinative in many cases with regard to whether individual members of a species, or entire species, live or die, survive or become extinct. For example, at one time there were 75,000 or more grizzly bears in the western United States; today there are about 2,000. According to Defendant FWS, "with European settlement of the American West and government-funded bounty programs aimed at eradication, grizzly bears were shot, poisoned, and trapped wherever they were found, and the resulting declines in range and population were dramatic." 82 Fed. Reg. 30502, 30508 (June 30, 2017). Nevertheless, Defendant FWS removed grizzly bears' ESA protection in 2007 and again in 2016. Comprehensive litigation followed. The courts held that Defendant FWS's actions violated the ESA and were vacated. See ¶¶ 27, 28 above.

39. Decisions by Defendant FWS apply in many cases to species located outside the United States such as whether trophy-hunted species in Africa can be imported into the United States. Defendant Williams will be required to make those decisions.

40. Petitions have been filed with Defendant FWS by Idaho (March 2022), Montana (December 2021) and Wyoming (January 2022) to remove ESA protections for grizzly bears, icons of American history, in the GYE and the Northern Continental Divide Ecosystem, which together contain close to 100% of the grizzly bears in the Lower 48 States. Defendants FWS and Williams will be required to grant or deny the petitions.

41. If ESA protection is terminated for grizzly bears for a third time, as expected, litigation again will follow, including by Plaintiff. See ¶¶ 27-30 above. If the "delisting" rule is upheld in litigation, slaughter of grizzly bears will resume in accordance with the *Memorandum of Agreement Regarding the Management and Allocation of Discretionary Mortality of Grizzly Bears in the Greater Yellowstone Ecosystem* ("MOA") signed by Idaho, Montana and Wyoming in 2016. "Discretionary Mortality" as used in the MOA means trophy hunting; the MOA divides trophy hunting deaths among the three states on a proportionate basis. Implementation of the MOA has been prevented by the litigations that have preserved the bears' ESA protections. See ¶¶ 27, 28 above. Defendants FWS and Williams will be required to decide whether Defendant FWS will defend the delisting rule in that litigation.

42. In February 2022 the U.S. District Court for the Northern District of California struck down a 2020 rule issued by Defendant FWS that removed ESA protection for gray wolves in the United States. *Defenders of Wildlife et al. v. U. S. Fish & Wildlife Service et al.*, 2022 WL 499838 (N.D. Cal. 2022), on appeal to Ninth Circuit Court of Appeals. See ¶ 29 above. Defendants FWS and Williams will be required to decide whether or not to continue to prosecute the appeals.

43. The *Defenders of Wildlife* decision does not apply to gray wolves in the Northern Rocky Mountain ("NRM") states dues to the inclusion in a major 2011 federal appropriations bill

- 13 -

of a rider inserted by Montana Senator Jon Tester (one of Defendant Williams' sponsors to be FWS Director; see ¶ 57 below) that statutorily removed ESA protection for gray wolves in the NRM states,  Thereafter petitions were filed with Defendant FWS to restore ESA protection for gray wolves throughout the United States; and on August 9, 2022, a citizen suit under the ESA was filed for declaratory and injunctive relief to require Defendant FWS to grant the petitions. *Center for Biological Diversity et al. v. U. S. Department of the Interior et al.*, Montana District Court, Case No. 9:22-cv-00134.  Defendants FWS and Williams will be required to decide whether or not to defend the litigation or grant the petitions and render the litigation moot.

44.  Pending in Congress are identical bills introduced by Wyoming Representative Liz Cheney (H. R.  1403) and Wyoming Senator Barbara Lummis (S. 973) to overrule the results of the grizzly bear litigations described in ¶¶ 27, 28 above.  The bills (a) require Defendant FWS to issue a new rule removing the bears' ESA protection; (b) preclude comments by the public otherwise permitted by Administrative Procedure Act, 5 U.S.C. § 553; and (c) preclude judicial review.  The bills trample on the constitutional separation of powers in addition to contemplating great harm to the bears under the MOA (see ¶ 41 above)  and otherwise.  Defendants FWS and Williams will be required to decide whether to support or oppose those bills.

45.  The decisions by Defendants FWS and Williams with regard to the matters described in ¶¶ 39-44 above, among all others, will be legally contaminated and subject to legal challenge in litigation, including by Plaintiff.

### X.  Statutory Qualifications for FWS Director

46.  In 1974 Congress reorganized and upgraded Defendant FWS so that it "could address with new spirit the task assigned to its predecessor agencies."  16 U.S.C. § 742b(a) and

(c), Pub. L. 93-271, 93rd Cong., H. R. 13542 (April 22, 1974); H. Rep. 93-952, 93rd Cong., 2nd

Sess. 14, 16 (1974).

47.  When Congress upgraded Defendant FWS, Congress upgraded the qualifications

required for the FWS Director by adding 16 U.S.C. § 742b(b), which required the FWS Director

to have **"scientific education and experience."**  Congress stated in the House report:

> In keeping with the intent of upgrading the position of Director, your Committee
> deemed it appropriate to add language . . . that would set forth the background and
> qualifications the individual should have who is to head the office, thereby
> assuring the appointment of a professionally-trained public servant.  In this
> regard, new subsection (b) contains language that would require the President to
> appoint as Director an individual who is, by reason of scientific education and
> experience, knowledgeable in the principles of fisheries and wildlife management.

H. Rep. 93-952, 93rd Cong., 2nd Sess. at 17.  Moreover, Congress included in 16 U.S.C. §

742b(b) a requirement of Presidential appointment and Senate approval for the FWS Director,

stating in the House report:

> It is appropriate that the person who occupies this position, and who administers
> programs which relate directly to our quest for environmental quality, be
> nominated by the President and confirmed by the Senate.

H. Rep. 93-952, 93rd Cong., 2nd Sess. at 16.

48.  As a result of the amendment of 16 U.S.C. § 742b(b), Congress assured that the

position of FWS Director would "be occupied by professional public servants . . . not subject to

political taint," recognizing that "some people in that particular responsibility in other days who

were political appointments . . . were incompetent."  House of Representatives, Hearings Before

the Subcommittee on Fisheries and Wildlife Conservation and the Environment of the

Committee on Merchant Marine and Fisheries, 93rd Cong., 2d Sess. 166-67 (Feb. 15, 22, 1974).

49.  Congress wanted the FWS Director to have the highest level of scientific

qualifications, since the ESA explicitly requires decisions under the ESA to be evaluated on the

basis of the "best scientific and commercial data available" and the "best scientific data available after taking into consideration the economic impact," which can only be done by a scientist trained in wildlife biology and related areas.  16 U.S.C. § 1533(b)(1)(A), (2).

50.  16 U.S.C § 742b(b) does not allow the "scientific education and experience" requirement to be waived under any circumstances; and no mention of waiver is made in the legislative history.

51.  Defendant Williams is a Montana-admitted lawyer on inactive status.  She has never had, and does not now have, "scientific education and experience" within the meaning of 16 U.S.C. § 742b(b).

52.  Defendant Williams served as Legal Counsel to Montana Fish, Wildlife and Parks ("MFWP"; 1998-2011); Deputy Solicitor, Parks and Wildlife, for Defendant FWS (2011-2013); and Assistant Professor, University of Montana School of Law (2013-2017).  These positions, unlike 16 U.S.C. § 742b(b), required legal, not scientific, education.

53.  Director Williams served as Director of MFWP (2017-2020) and Principal Deputy Director for Defendant FWS (2021 until confirmed as FWS Director).  These positions, unlike 16 U.S.C. § 742b(b), did not require scientific education by statute or otherwise.

54.  The Office of the Solicitor of Defendant DOI in a memorandum dated October 1, 2021, granted Director Williams a limited waiver of the prohibition in Executive Order 13989 (Jan. 20, 2021) against participation in certain pending FWS matters involving a former employer.  The limited waiver did not refer to or involve, directly or indirectly, the "scientific education and experience" requirement of 16 U.S.C § 742b(b).

55.  Defendant Williams fails to satisfy the "scientific education and experience" requirement of 16 U.S.C § 742b(b) to hold the office of FWS Director.

- 16 -

## XI. Presidential Nomination of Defendant Williams

56. The FWS Director is required to be appointed by the President of the United States with the advice and consent of the United States Senate. 16 U.S.C § 742b(b).

57. Montana Senators Steve Daines and Jon Tester requested President Joe Biden to nominate Defendant Williams to be FWS Director despite her failure to satisfy the scientific education and experience" requirement of 16 U.S.C § 742b(b) to hold the office of FWS Director.

58. President Biden announced his intention to nominate Defendant Williams to be FWS Director on October 22, 2021, and formally nominated her for that position on October 25, 2021, despite her failure to satisfy the "scientific education and experience" requirement of 16 U.S.C § 742b(b) to hold the office of FWS Director.

59. Due to a procedural requirement, on January 17, 2022, President Biden re-nominated Williams to be FWS Director.

## XII. Senate Confirmation of Defendant Williams

60. Defendant Williams' confirmation hearing took place on November 17, 2021, before the Senate Committee on Environment and Public Works ("SEPW"). Only nine (of 20) members of the SEPW attending the confirmation hearing.

61. The "scientific education and experience" requirement of 16 U.S.C. § 742b(b) was not mentioned by members of the SEPW or Defendant Williams during the November 17, 2021, confirmation hearing.

62. On January 12, 2022, the SEPW voted to confirm Defendant Williams as FWS Director, despite her failure to satisfy the "scientific education and experience" requirement of 16 U.S.C. § 742b(b), and advanced Defendant Williams' confirmation process to the full Senate.

63. Defendant Williams, despite her failure to satisfy the "scientific education and experience" requirement of 16 U.S.C. § 742b(b), was confirmed as FWS Director by the full Senate on February 17, 2022, by voice vote. 168 Cong. Record D187 (Feb. 17, 2022).

64. The SEPW and its staff were warned by Plaintiff prior to the SEPW confirmation vote and full Senate vote that Defendant Williams did not have "scientific education and experience" as required by 16 U.S.C. § 742b(b), but the SEPW and full Senate disregarded the warnings.

65. Defendant Williams has occupied the office of FWS Director continuously and illegally since her Senate confirmation to the present date.

66. Defendant Williams has fully participated in the Defendant FWS's decision-making processes continuously since assuming office.

67. At no point in the nomination and confirmation process was the requirement of 16 USC § 742b(b) that Defendant Williams have "scientific education and experience" raised for the public record by public officials, including, among others, President Biden, members of The White House staff, members of the SEPW and its staff, Senators (including Defendant Williams' sponsors, Montana Senators Steve Daines and Jon Tester), Defendant Haaland or Defendant Williams; and that requirement has not been raised for the public record by those officials subsequent to the completion of that process and Defendant Williams' illegal occupation of the office of FWS Director.

68. Defendant Williams holds the office of FWS Director in violation of 16 U.S.C. § 742b(b).

## XIII. Sheehan Precedent

69. All Defendants and others involved in the nomination and confirmation process for

Defendant Williams were fully aware of the "scientific education and experience" requirement of

16 U.S.C. § 742b(b) before and during the process as a result of the experience involving the

appointment in 2017 by then-Secretary of the Interior Ryan Zinke of Gregory Sheehan

("Sheehan") to be Acting Director of Defendant FWS.

70. Daniel Jorjani, then-Principal Deputy Solicitor of Defendant DOI, stated in a June 5,

2017, email to Lori Mashburn, then-Defendant DOI's White House Liaison, in pertinent part, as

follows:

> I just read through to the last line [of Defendant DOI's June 5, 2017, press
> release] and saw that [Sheehan is] also going to be Acting [FWS Director].
> Sheehan just has a business degree: http://iwjv.org/bio/greg-sheehan Did
> someone already confirm that he can serve as Acting FWS Director w/o a degree
> in the appropriate field? Generally, the FWS Director should have a scientific
> degree in addition to real-world experience:
> http://www.law.cornell.edu/uscode/text/16/742b

71. Defendants DOI and FWS determined that Sheehan was disqualified from serving as

Acting FWS Director due to his violation of 16 U.S.C. § 742b(b); his employment by Defendant

FWS was terminated in 2018.

## XIV. Violation of Executive Order 12674

72. The White House promulgated Executive Order 12674 on April 12, 1989, and

modified it by Executive Order 12731 on October 17, 1990, to "establish fair and exacting

standards of ethical conduct for all executive branch employees."

73. Executive Order 12674, as modified, provides, in pertinent part[4]:

---

[4] **https://www.doi.gov/ethics/basic-obligations-of-public-service**

> Public service is a public trust, requiring you to place loyalty to the Constitution, the laws, and ethical principles above private gain.
> . . . . .
> You shall put forth honest effort in the performance of your duties.
> . . . .
> You shall endeavor to avoid any actions creating the appearance that you are violating the law . . . .

74. Defendant Williams' illegal occupation of the office of FWS Director violates Defendant DOI's ethical standards set forth in Executive Order 12674, as modified.

## XV. <u>Urgent Need for Requested Relief</u>

75. All significant decisions made by Defendant FWS in which Defendant Williams has participated, or will participate in the future, which is the great majority of, or all, ESA and other decisions made by Defendant FWS during her tenure, including those crucial decisions described in ¶¶ 39-44 above, have been and will be (a) contaminated by her participation and (b) subject to invalidation when challenged judicially, which will be the standard course of action by parties aggrieved by such decisions, including Plaintiff.

76. Prior to invalidation, those invalid decisions could adversely affect the survival or recovery of endangered or threatened species that must be protected under the ESA. Such adverse effects rarely, if ever, can be reversed.

77. Granting the requested relief will avoid (a) adverse consequences to endangered or threatened species prior to resolution in litigation and (b) wastes of judicial resources due to legal challenges.

## XVI. <u>Requests for Relief</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare, pursuant to 28 U.S.C. § 2201, that Defendant Williams illegally occupies the office of FWS Director due to her lack of "scientific education and experience" in violation of 16 U.S.C. § 742b(b);

2. Enjoin, pursuant to 28 U.S.C. § 2202, Defendant Williams from continuing to occupy the office of FWS Director, effective immediately;

3. Require Defendants DOI, FWS and Haaland to implement the injunction and cause the immediate termination of Defendant Williams as FWS Director; and

4. Grant such additional relief as the Court deems just and proper.

Robert H. Aland, Pro Se Plaintiff

140 Old Green Bay Road
Winnetka, IL 60093-1512
Telephone: (847) 784-0994
Fax: (847) 446-0993
rhaland@comcast.net

October 21, 2022